J-S39016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: A.A.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: D.A., FATHER | No. 167 EDA 2015 |

Appeal from the Decree December 12, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-00-00390-2013
CP-51-DP-0001071-2012
FID: 51-FN-001570-2012

BEFORE: BOWES, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 21, 2015**

D.A. ("Father") appeals from the decree entered December 12, 2014, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated his parental rights to his minor daughter, A.A.A. ("Child"), born in November of 2010.[1]  We affirm.

The trial court summarized the relevant factual history as follows.

In April, 2012, mother, [Mother,] left the child, [Child], on the porch of the home of [J.L.], [C]hild's paternal aunt.

On June 13, 2012, [J.L.] contacted the Department of Human Services (DHS) stating that she had been caring for [Child] since

_____

[1] Child's mother, J.H. ("Mother"), voluntarily relinquished her parental rights to Child during a permanency review hearing on July 10, 2014.  Mother is not a party to the instant appeal.

April, 2012[,] but did not have legal custody or medical insurance for the child.

On June 19, 2012, DHS obtained an Order of Protective Custody (OPC). The child, [Child],[]remained in the custody and care of [J.L.].

A shelter care hearing was held on June 21, 2012[,] before the Honorable Edward C. Wright. Judge Wright ordered that the child be temporarily committed to DHS.

On June 28, 2012, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. [Child] was adjudicated dependent and committed to DHS.

On December 12, 2012[,] DHS held a Family Service Plan (FSP) meeting. [FSP] objective[s] were issued for the parents. The father did not participate in the FSP meeting.[2]

On or about January 14, 2013[,] DHS learned from [J.L.] that she was no longer able to care for [Child].

On January 16, 2013[,] DHS arranged for [Child] to be placed with [A.M.], [C]hild's maternal cousin. Child's sibling had previously been placed with [A.M.].

On January 29, 2013[,] DHS obtained an OPC for [Child] and placed her in kinship care with [A.M.].

A shelter care hearing was held on January 31, 2013[,] before the Honorable Jonathan Q. Irvine. Judge Irvine ordered [Child] to be committed to DHS.

On May 15, 2013[,] an FSP meeting was held. FSP objectives were set for the parents. The father did not participate in the meeting. The father's FSP objectives were: 1) [F]ather will maintain contact with the child and 2) [F]ather will communicate with DHS.

---

[2] As discussed in greater detail, *infra*, the caseworker testified Father was incarcerated at SCI Cresson.

Trial Court Opinion, 3/3/2015, at 1-2 (unpaginated).

On July 2, 2013, DHS filed a petition to terminate Father's parental rights to Child involuntarily. A termination hearing was held on December 12, 2014, during which the trial court heard the testimony of DHS social worker, Bessie Lee; and Bethana social worker, Messia Hill. The court entered its decree terminating Father's parental rights that same day. Father timely filed a notice of appeal on January 8, 2015, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father now raises the following issues for our review.

> 1. Whether the [t]rial [c]ourt erred by terminating the parental rights of Appellant, Father, under 23 Pa.C.S.A § 2511[](a)(1), (a)(2), (a)(5) and § 2511(a)(8)?
>
> 2. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A § 2511(b), that termination of [Father's] parental rights best serves the child's developmental, physical and emotional needs and welfare?

Father's brief at 5 (trial court answers omitted).[3]

_____

[3] Father also appears to challenge the order entered December 12, 2014, which changed Child's permanency goal to adoption. Father's brief at 4, 15. However, Father has waived any challenge to the change of goal order by failing to include this claim in his statement of questions involved. **See Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (citing Pa.R.A.P. 2116(a)) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved . . . ."). Additionally, Father's brief does not contain any citation to, or discussion of, the relevant provisions of the Juvenile Act, or of any other pertinent authority. **See In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting **In re A.C.**,
*(Footnote Continued Next Page)*

We review this appeal according to the following standard:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). This Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), in addition to Section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we conclude that the trial court properly terminated Father's parental rights pursuant to Sections 2511(a)(1) and (b), which provide as follows:[4]

---

[4] We note that the trial court concluded inappropriately that Father's parental rights could be terminated under Sections 2511(a)(5) and (a)(8). Both of these Sections require that the subject child have "been removed from the care of the parent by the court or under a voluntary agreement with an agency" in order to be applicable. 23 Pa.C.S.A. § 2511(a)(5), (8). Because Child was not removed from Father's care, his parental rights cannot be terminated under these Sections. *See In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (concluding that termination was inappropriate under Sections 2511(a)(5) and (8) "because the record reflects that C.S. was never in Appellant's care and, therefore, could not
*(Footnote Continued Next Page)*

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1) and (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006)). Further,

_(Footnote Continued)_ ───────────────

have been removed from his care."); **see also In re Z.P.**, 994 A.2d 1108, 1123 n.2 (Pa. Super. 2010) (same).

- 6 -

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court discussed *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975), a case wherein the Court considered the issue of the termination of parental rights of incarcerated persons involving abandonment, which is currently codified at Section 2511(a)(1). The *S.P.* Court stated:

Applying in *McCray* the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." *Id.* at 655. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*

*In re Adoption of S.P.*, 47 A.3d at 828. The *S.P.* Court continued:

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

- 7 -

[*McCray*] at 655 (footnotes and internal quotation marks omitted). . . .

*In re Adoption of S.P.*, *supra*; *see also In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (internal citations omitted) (stating that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child").

With respect to Section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, Father argues that DHS failed to prove by clear and convincing evidence that his parental rights should be terminated. Father emphasizes that the DHS and Bethana social workers made little, if any, effort to contact him. Father's brief at 11. Father further contends that

there was not sufficient evidence presented to establish that he and Child do not share a bond. *Id.* at 15.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court found as follows:

> It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, [F]ather failed to perform parental duties for the child. . . .
>
> In the instant case the DHS social worker testified that the father failed to complete any of his FSP objectives despite the fact that DHS attempted to contact [F]ather on several occasions. Specifically, the father failed to maintain communication with his child and failed to make himself available to DHS.
>
> ***
>
> . . . . Furthermore, the DHS social worker testified that the father NEVER requested visitation with his child and NEVER inquired into the needs of his child while the child was in foster care[.] The father has been incarcerated the entire time the child has been in foster care.

Trial Court Opinion, 3/3/2015, at 3-4 (unpaginated, citations to the record omitted). The testimonial evidence supports the court's findings, as follows.

DHS social worker, Bessie Lee, testified that she was assigned to Child's case in December of 2012. N.T., 12/12/2014, at 7. Ms. Lee determined that Father was incarcerated at SCI Cresson[5], and sent Father a

---

[5] The record reveals that Father pled guilty to burglary on December 11, 2006, and received a sentence of two and one-half to ten years' incarceration. DHS Exhibit 2 (Secure Court Summary), at 1. The record does not indicate the date Father was paroled, however, he was arrested

*(Footnote Continued Next Page)*

letter, which was not returned. *Id.* at 9-10. Ms. Lee also made three phone calls to SCI Cresson in an effort to contact Father. *Id.* at 26. However, Ms. Lee was unable to reach Father's social worker. *Id.* at 27. Ms. Lee testified that Father was later moved to SCI Benner. *Id.* at 10. Ms. Lee called SCI Benner to confirm that Father was there, and sent an additional letter. *Id.* This letter also was not returned. *Id.* Ms. Lee was able to reach Father's social worker at SCI Benner, but the social worker was unable to set up a visit between Father and Ms. Lee. *Id.* at 28. At no point did Father ever respond to Ms. Lee, nor did Father ever attempt to send Child letters or cards through Ms. Lee. *Id.* at 11, 13. Ms. Lee admitted that she did not personally send Father a copy of his FSP, and that she could not attest whether or not he actually received a copy of the plan. *Id.* at 24. However, she explained that FSPs are mailed by an "FSP processing unit." *Id.* at 29, 34. Ms. Lee stated that she submitted FSPs for mailing, and that they were not returned.[6] *Id.* at 31.

Bethana social worker, Messia Hill, testified that, to his knowledge, Father has not called to ask about Child's needs or "made any outreach" to

*(Footnote Continued)* ———————————

again on December 25, 2011, on new charges. Id. at 4. Although these charges were later dismissed on August 13, 2012. *Id.*, it is unclear from the record why Father was incarcerated as of December 2012.

[6] At the beginning of the termination hearing, DHS entered into evidence four letters from Ms. Lee to Father. N.T., 12/12/2014, at 4-6. One of the letters was not dated, but indicated that a hearing would be held on July 17, 2013. DHS Exhibit 8. The remaining letters were dated December 18, 2012, May 15, 2013, and July 9, 2014. DHS Exhibits 4, 5, and 7.

Child. ***Id.*** at 39. Mr. Hill stated that his agency sent correspondence to Father but did not receive a response. ***Id.*** at 42-43. Mr. Hill conceded, however, that he did not personally mail a service plan to Father, and did not otherwise attempt to contact him. ***Id.*** at 46-49.

Thus, the testimonial evidence demonstrates that Father refused or failed to perform parental duties for a period in excess of six months prior to the filing of the petition to terminate his parental rights on July 2, 2013. At the time of the termination hearing, Child was about four years old, and had been in foster care since she was about one and a half. Father did not make any attempt to contact Child during her time in foster care, despite being sent numerous letters. Father has not made a good faith effort to maintain a place of importance in Child's life. As such, Father's conduct warrants termination pursuant to Section 2511(a)(1).

Having determined that the trial court properly terminated Father's parental rights pursuant to Section 2511(a)(1), we now review the order pursuant to Section 2511(b). The trial court found as follows:

> . . . . In the instant matter, the testimony established [Child] would not suffer any irreparable emotional harm if [Father's] parental rights were terminated.
>
> The testimony of [the] social worker established [that Child has] established a bond with the maternal cousin. The maternal cousin is the child's current caregiver. The maternal cousin meets all of the needs of the child. The child is extremely bonded with the caregiver, looks to her for love, safety and support, and refers to her as "mommy" . . . .

Trial Court Opinion, 3/3/2015, at 5 (unpaginated, citations to the record omitted). Again, the testimonial evidence supports the court's findings.

Ms. Lee testified that Child currently is in a pre-adoptive foster home. N.T., 12/12/2014, at 13. Child refers to her foster mother as "mommy," and together they share a "parent child bond." *Id.* at 14. Ms. Lee was not sure whether Father had been involved in Child's care prior to being incarcerated. *Id.* at 8-9. However, Father has been incarcerated for at least the last year and a half of this 4-year-old child's life. Ms. Lee testified that Child has never asked for Father. *Id.* at 33. Ms. Lee opined that she did not have any reason to believe that terminating Father's parental rights would cause Child irreparable harm. *Id.* at 14.

Mr. Hill agreed that Child has a "[g]reat" relationship with her foster mother, and looks to her foster mother to meet her needs. *Id.* at 38, 40. Mr. Hill also testified that Child refers to her foster mother as "mom." *Id.* at 43. Mr. Hill agreed that Child has never asked for Father, and did not think that Child would even recognize Father. *Id.* at 38, 51. Mr. Hill opined he had no reason to believe that Child would suffer irreparable harm if Father's parental rights were terminated, and testified removing Child from the care of her foster mother would result in "[s]ignificant harm." *Id.* at 39.

Based upon this evidence, we discern no abuse of discretion by the trial court in terminating Father's parental rights to Child pursuant to Section 2511(b). The court did not abuse its discretion in concluding there is no

- 12 -

evidence of any bond between Child and Father and Child would not suffer irreparable harm if Father's rights were terminated. Moreover, Child is bonded with her foster mother.

Accordingly, we affirm the decree involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015